IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA


JOSEPH LAROSA and DOMINICK
LAROSA,

        Plaintiffs,

v.                          //    CIVIL ACTION NO. 1:07CV78
                                   (Judge Keeley)


ANDREA PECORA, also known as
Andrea Fucillo, JENNIFER LAROSA
WARD, CHRIS WARD, VIRGIL D. LAROSA,
SANDRA LAROSA, and CHEYENNE SALES,
CO., INC.,

        Defendants.


ORDER DENYING CHEYENNE SALES COMPANY'S
MOTION TO DISMISS

        On November 6, 2007, the Court conducted a scheduling
conference during which it heard argument on a motion to dismiss
filed by defendant Cheyenne Sales Company, Inc. ("Cheyenne").  In
its motion, Cheyenne asserted five bases for the Court to dismiss
it, with prejudice, from this case.  For the reasons stated on the
record, and as discussed more fully below, the Court denies
Cheyenne's motion to dismiss.

I.   FACTS AND PROCEDURAL HISTORY

        In 1982, the plaintiffs, Joseph and Dominick LaRosa (the
"LaRosa Brothers" or "the Brothers"), loaned $800,000 to Virgil B.
and Joan LaRosa ("the Debtors").  In 1993, after the Debtors
defaulted on the loan, the LaRosa Brothers filed suit in the United
States District Court for the District of Maryland.  The Debtors

ORDER DENYING CHEYENNE SALES COMPANY'S
MOTION TO DISMISS

did not file a response, and, consequently, in 1994, the LaRosa Brothers filed a motion for confessed judgment. On November 3, 1994, the district court entered a judgment ("the Judgment") against the Debtors for the amount of the loan, plus interest and attorneys' fees.

On September 11, 2002, the LaRosa Brothers filed a Certification of Judgment for registration in this Court, and attempted to execute on the Judgment. On November 19, 2003, the Debtors filed Chapter 11 Bankruptcy, after which all matters in the registration action were stayed. Shortly thereafter, however, the bankruptcy court lifted the stay for the limited purpose of allowing this Court to determine the validity of the Judgment.

On January 23, 2004, Magistrate Judge John S. Kaull found that the Maryland judgment was valid and that its registration in this Court was proper. The Debtors appealed, and on September 3, 2004, the Fourth Circuit Court of Appeals affirmed Magistrate Judge Kaull's decision. Meanwhile, on April 5, 2004, the LaRosa Brothers filed a proof of claim in the Debtor's bankruptcy.

On June 12, 2007, the LaRosa Brothers filed this lawsuit under West Virginia's Uniform Fraudulent Transfers Act, W.Va. Code §§ 40-1A-1 to -12, claiming that defendants Andrea Pecora, also known as Andrea Fucillo, Jennifer LaRosa Ward, Chris Ward, Virgil D. LaRosa,

**ORDER DENYING CHEYENNE SALES COMPANY'S**
**MOTION TO DISMISS**

and Sandra LaRosa (jointly "the Individual Defendants") and Cheyenne, engaged in, or benefitted from, fraudulent transfers designed to hinder, delay and defraud the LaRosa Brothers' efforts to satisfy the Judgment. The Complaint alleges that, in their bankruptcy claim, the Debtors listed as major assets marketable securities with a value of $1.1 million, real estate with a value of $1,090,835, and stock in Cheyenne with a value of zero.[1]

Cheyenne is a coal tipple and cleaning facility located on real property in Upshur County, West Virginia, that is owned by the Debtors' children, who are also the Individual Defendants. The LaRosa Brothers assert that, prior to the bankruptcy, the Debtors and the Individual Defendants had an oral agreement that Cheyenne could use the property for its operations. The Brothers further allege that, on November 3, 2003, approximately two weeks before filing for bankruptcy, the Debtors entered into a written agreement with the Individual Defendants, entitled "Renewal Lease," which conferred additional benefits on the Individual Defendants beyond the monthly rent payments of $5,000.[2]

---

[1]    During the summer of 2006, Virgil B. LaRosa, one of the Debtors, passed away. The stock he owned in Cheyenne is currently held by his estate.

[2]    Pursuant to the terms of the "Renewal Lease," the monthly rent payments of $5,000 are "deferred" until certain conditions are met.

### ORDER DENYING CHEYENNE SALES COMPANY'S
### MOTION TO DISMISS

The Renewal Lease obligates Cheyenne to place $700,000 in an interest bearing escrow account to be used for reclamation costs associated with the mining activities on the property.  Any funds not used for reclamation are to be paid to the Individual Defendants as "deferred rent."  The Debtors personally guaranteed Cheyenne's obligation with respect to the entire lease, including the $700,000.

The Complaint alleges that, after the LaRosa Brothers obtained their Judgment, Virgil B. LaRosa elected to receive only nominal compensation from Cheyenne and delegated day-to-day control over its operations to his son, Virgil David LaRosa.  Between 1996 and 2005, Virgil David LaRosa and one or more of the other Individual Defendants allegedly received approximately $8.5 million in compensation and benefits from Cheyenne.

The Complaint also alleges that, on January 25, 2001, Cheyenne entered into a Loan Agreement with Huntington National Bank ("the Bank"), that permitted Cheyenne to borrow up to $950,000 on a line of credit.  As collateral for this loan, the Debtors pledged approximately $1.1 million in marketable securities.  The LaRosa Brothers contend that, at the time they served a Suggestion upon the Bank in an effort to execute upon the Judgment, the value of the Collateral exceeded the aggregate of Cheyenne's obligations to

## ORDER DENYING CHEYENNE SALES COMPANY'S
## MOTION TO DISMISS

the Bank by approximately $700,000. They argue that, despite their insolvency, the Debtors and one or more of the Individual Defendants caused Cheyenne to draw down the maximum amount available under the line of credit to pay the $700,000 into the escrow account described in the Renewal Lease.

The Complaint alleges that, on July 6, 2003, the Debtors transferred $105,000 of their marketable securities to Cheyenne, leaving them with less than $20,000 in marketable securities. Cheyenne then used the money to purchase two twenty-year annuities in the respective amounts of $700,000 and $320,000. According to the LaRosa Brothers, by these acts the Debtors effectively transferred substantially all of their non-exempt personal property into a controlled corporation operated by one of their children in order to prevent their personal property from being used to satisfy the Judgment. The Brothers seek to void the transfers and request that the Court award them both the ownership interests and beneficial interest in the proceeds.

## II.  LEGAL ANALYSIS

Cheyenne asserts five bases for dismissal.

### A.  12(b)(1) - Lack of Jurisdiction

Rule 12(b)(1) of the Federal Rules of Civil Procedure provides that a motion to dismiss may be made on the basis that the court

ORDER DENYING CHEYENNE SALES COMPANY'S
MOTION TO DISMISS

lacks jurisdiction over the subject matter. Cheyenne alleges that this Court does not have jurisdiction to hear the LaRosa Brothers' claim because the subject matter of the claim is a "core proceeding" that should be heard only by the bankruptcy court.

Cheyenne contends that, pursuant to 28 U.S.C. § 157(b)(2)(H), core proceedings, including "proceedings to determine, avoid, or recover fraudulent conveyances," are to be adjudicated by the bankruptcy court, because it has specialized knowledge and skill in these areas.[3]  It alleges that the LaRosa Brothers have brought their claim in federal district court only because the statute of limitations for filing adversary matters in the bankruptcy court has run.

In response, the LaRosa Brothers assert that: 1) their claims are based entirely on West Virginia state law; 2) none of the parties in this action are debtors in the LaRosa bankruptcy case; 3) only a trustee or a debtor-in-possession may prosecute core proceedings in a bankruptcy action; and 4) a third party may only initiate a core proceeding if it has been granted derivative

---

[3]     Cheyenne also alleges that the LaRosa Brothers have raised a second issue in their complaint that is also a "core proceeding" pursuant to 28 U.S.C. § 157(b)(2)(F).  Specifically, Cheyenne alleges that they ask the court to "determine, avoid and recover preferences."  The Court has not found any such claim in the Complaint.  The Brothers respond that they are asserting all their claims under the West Virginia Fraudulent Transfer Act.

ORDER DENYING CHEYENNE SALES COMPANY'S
MOTION TO DISMISS

standing.   See Baltimore Emergency Servs. II v. Nat'l Century

Financial Enterprises, Inc., 432 F.3d 557, 560 (4th Cir. 2005).

Because they are not the trustees or in any other way a party to

the bankruptcy proceeding, the Brothers contend that their case is

not a "core proceeding" under 28 U.S.C. § 157(b)(2)(H), and  does

not fall under the jurisdiction of the bankruptcy court.

The LaRosa Brothers candidly acknowledge that their prior

counsel did attempt to file an adversary matter in the bankruptcy

court in an effort to pursue the alleged fraudulent transfers, but

that the bankruptcy court, sua sponte, questioned their standing to

commence such an action and later dismissed their adversary

proceeding without prejudice.

Additionally, the Brothers contend that the bankruptcy court

granted them relief from the automatic stay attached to the

Debtors' bankruptcy proceeding in order to specifically allow them

to pursue this action.[4]  They assert that the court would not have

---

[4]     The order of the bankruptcy court issuing the stay
states:
        Upon consideration of the representations of
        counsel to the parties, respectively, and for
        reasons that are more fully set forth on the
        record, Joseph and Dominick LaRosa have
        demonstrated that sufficient cause exists
        pursuant to Bankruptcy Code § 362(d)(1) for
        allowing them relief from the automatic stay
        to pursue the avoidance of certain alleged
        fraudulent transfers.

done so had it believed this action would interfere with its administration of the Debtors' bankruptcy case.

In a recent opinion in another case, the same bankruptcy court found that a trustee or debtor-in-possession has the exclusive right to exercise causes of action which are "property of the Debtor's bankruptcy estate."  In re John Patrick Ball, 2007 WL 1577746 (Bankr. N.D.W.V., Flatley, J.).  That "property" includes "all legal and equitable interests of the debtor." Id., citing 11 U.S.C. § 541(a).  In addition, the court specifically found that claims arising under W.Va. Code § 40-1A-1 ("§ 40-1A-1"), the Uniform Fraudulent Transfers Act, constituted property of the debtors' bankruptcy estate. Id. at 4.  Thus, a creditor who is not a trustee or debtor-in-possession, but who is seeking to assert state law claims of fraud in bankruptcy court, would lack standing under the bankruptcy code unless the creditor seeks and receives derivative standing from the bankruptcy court. Id. at 5.

In the case at bar, because the LaRosa Brothers are neither trustees nor debtors-in-possession, they lack standing to bring a core proceeding in bankruptcy court to assert claims under § 40-1A-1.

ORDER DENYING CHEYENNE SALES COMPANY'S
MOTION TO DISMISS

**B.    Rule 12(b)(7): Failure to Join the Real Party in Interest**

Federal Rule of Civil Procedure 12(b)(7) states that "failure to join a party under Rule 19" is a defense that may be raised by motion at the option of the pleader.  Rule 19(a) provides that a person should be joined as a party in an action if (1) in their absence complete relief cannot be granted, or (2) the person has an interest in the subject matter of the action, and disposition of the action without joining the person would impair or impede the person's ability to protect their interests, or leave any of the other parties already joined subject to a "substantial risk of incurring double, multiple, or otherwise inconsistent obligation by reason of the claimed interest."  Rule 19(b) then provides that the action may be dismissed when the absent party is "indispensable" and it is not feasible to join them.  In other words, Rule 19 requires that a person be joined as a party in an action if that person is both necessary and indispensable to the action.  See Owens-Illinois, Inc. v. Meade, et al., 186 F.3d 435, 440 (4th Cir. 1999).

Cheyenne asserts that the actions of the Debtors form the sole basis for the Complaint, and, as such, they must be joined in this action or Cheyenne will be unfairly forced to defend itself against the actions of the Debtors.  Without further explanation, it

asserts that the LaRosa Brothers have failed to join the Debtors "in an attempt to collect a recovery outside the jurisdiction of the Federal Bankruptcy Court." Cheyenne then asserts that it is not a proper party; however, rather than ask the Court to join the Debtors pursuant to Rule 19(a), it seeks dismissal from the case.

According to the LaRosa Brothers, although the Debtors initiated one or more of the alleged fraudulent transfers, they received none of the property that was fraudulently conveyed. Rather, the defendants in this case allegedly received and benefitted from those conveyances. The Brothers cite several cases for the proposition that, in a fraudulent conveyance case, the grantor/debtor is <u>not</u> an indispensable party where he has retained no interest in the conveyed property. <u>E.g.</u> <u>Allan v. Moline Plow Co., Inc.</u>, 14 F.2d 912, 915 (8th Cir. 1926).

Under § 40-1A-7, a plaintiff asserting fraudulent transfers may seek several remedies, including an attachment against the asset transferred, or an attachment against other property <u>of the transferee</u>, or an injunction against further disposition of the asset transferred or other property by the debtor <u>or a transferee</u> (emphasis added). Thus, the statute clearly provides remedies against the transferee who is the recipient of the fraudulent

### ORDER DENYING CHEYENNE SALES COMPANY'S
### MOTION TO DISMISS

transfers.  Because the LaRosa Brothers have asserted that Cheyenne is such a transferee, it is a proper defendant in this action.

Moreover, under Rule 19, the Debtors are not necessary and indispensable parties to the action because the LaRosa Brothers seek no relief from the Debtors.  Furthermore, the Debtors have claimed no interest in the property that was allegedly fraudulently transferred, nor could they, given that they voluntarily transferred the property and retained no interest in it. Therefore, the Debtors are not necessary parties to the action and need not be joined under Rule 19.

### C.    Rule 9(b): Pleading Fraud with Particularity

Rule 9(b) of the Federal Rule of Civil Procedure states:

> In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity.  Malice, intent, knowledge, and other condition of mind of a person may be averred generally.

Cheyenne submits that, in CSX Transportation, Inc. v. Gilkinson, et al., Judge Frederick P. Stamp, Jr. of this District held that "the 'circumstances' required to be plead with particularity under Rule 9(b) are 'the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby.'" 2007 WL 1795620, 2 (NDWV 2007), (quoting Harrison v. Westinghouse Savannah River Co., 176 F.3d 776, 784 (4th Cir. 1999).  In his

ORDER DENYING CHEYENNE SALES COMPANY'S
MOTION TO DISMISS

opinion, Judge Stamp noted that a plaintiff has the obligation to investigate the alleged fraud before filing an action, and that "a complaint alleging fraud should 'serve to seek redress for a wrong, not find one.'" Id. at 4, quoting Segal v. Gordan, 467 F.2d 602, 608 (2nd Cir. 1972).

According to Cheyenne, the LaRosa Brothers' Complaint fails to meet these requirements. First, it does not allege that Cheyenne is receiving any benefits itself, but rather alleges that Cheyenne is required to pay a benefit to the Individual Defendants. Further, other allegations in the Complaint "make no sense in light of corporation law," nor do they have any bearing on any specific fraudulent act, such as the allegation that Vigil B. LaRosa failed to exercise "unfettered control."

Cheyenne also argues that the Complaint's allegation that Virgil David LaRosa has received "significant compensation and benefits from Cheyenne" lacks any factual basis, and, further, that the reference in the Complaint to contracts with terms "unfavorable to Cheyenne," are unspecified. Finally, Cheyenne contends that the Complaint provides no factual basis to support the assertion that the money transfers were fraudulent.

According to the LaRosa Brothers, each of the transfers described in the Complaint includes a date when it is believed to

have taken place, the name of the parties believed to be involved, and a "relatively detailed description of the nature of the property that was transferred," as well as the value of the property. The Brothers contend that there is nothing further that they can be expected to know at this point about these transfers, all of which took place within a few months before the Debtors filed for bankruptcy protection. They state that requiring them to plead with any greater specificity at this time would place a "nearly impossible burden upon them."

In CSX, Judge Stamp found that the plaintiff had failed to plead one of its claims for fraud with particularity when it stated that "certain individuals or entities other than the listed defendants may have been involved in the fraudulent schemes at issue in this matter and those Defendants being currently unknown to the plaintiff are designated herein as John Does." 2007 WL 1795620 at 3.

In contrast to such generalities, the Complaint in this case contains numerous details about the allegedly fraudulent transfers. Regarding the Renewal Lease, for example, the LaRosa Brothers have identified the parties to the lease, the date of the lease, and have provided a copy of the lease itself. Regarding the fraudulent money transfers, they have provided the names of the parties

participating in the transfers of the marketable securities, the dates when transfers were made, the recipients of the transfers, and the benefits the recipients are believed to have received. The same type of information has been provided for the alleged fraudulent line of credit the Debtors established for Cheyenne.

By pleading identifying information, including dates, names and alleged benefits conferred, for each count of alleged fraud in their complaint, the LaRosa Brothers have stated the circumstances constituting the alleged fraud with sufficient particularity to avoid dismissal under Federal Rule of Civil Procedure 9(b).

**D.    Failure to Properly Support Claim for Injunctive Relief**

Citing the seminal case of Blackwelder Furniture Co. of Statesville, Inc., v. Seilig Manufacturing Co., Inc., 550 F.2d 189 (4th Cir. 1977), which sets out the standard for granting preliminary injunctive relief, Cheyenne argues that the Complaint fails to allege the requisite factual basis to establish that the LaRosa Brothers are entitled to injunctive relief. As the Brothers indicate, however, their complaint does not seek preliminary injunctive relief. Rather, for each count in the Complaint, they request the eight possible remedies provided by W.Va. Code § 40-1A-7, one of which is injunctive relief.

### ORDER DENYING CHEYENNE SALES COMPANY'S
### MOTION TO DISMISS

Whether injunctive relief is an appropriate remedy cannot be determined unless and until the claims in the Complaint are decided in favor of the LaRosa Brothers. Thus, on this basis there is no ripe ground for dismissal of such a remedy at this early stage of the proceedings.

### E.    12(b)(6) Claims

Rule 12(b)(6) of the Federal Rules of Civil Procedure allows a court to dismiss a complaint for "failure to state a claim upon which relief can be granted." In ruling on a Rule 12(b)(6) motion, a court must "take all wellpleaded material allegations of the complaint as admitted and view them in the light most favorable to the plaintiff." Dunn v. Borta, 369 F.3d 421, 423 n.1 (4th Cir. 2004) (quoting, DeSole v. U.S., 947 F.2d 1169, 1171 (4th Cir. 1991). "In general, a motion to dismiss for failure to state a claim should not be granted unless it appears certain that the plaintiff can prove no set of facts which would support its claim and would entitle it to relief." Mylan Labs., Inc. v. Matkari, 7 F.3d 1130, 1134 (4th Cir. 1993).

Cheyenne alleges six bases for its 12(b)(6) motion. First, the West Virginia Fraudulent Transfers Act requires plaintiffs to bring an action against a debtor, and one of the debtors in this case is not alive to address the issue. Cheyenne contends that the

**ORDER DENYING CHEYENNE SALES COMPANY'S
MOTION TO DISMISS**

Debtors, not it, performed the acts in issue and it therefore cannot defend the claim. As discussed earlier, the LaRosa Brothers contend that the Debtors are not necessary parties to the action, and they will meet their burden of proving fraudulent intent of the Debtors through objective evidence.[5]

The text of § 40-1A-8 provides that remedies may be sought against the debtor, or a transferee, or a person for whose benefit the transfer was made:

> (b) Except as otherwise provided in this section, to the extent a transfer is voidable in an action by a creditor under subdivision (1), subsection (a), section seven of this article, the creditor may recover judgment for the value of the asset transferred, as adjusted under subsection (c) of this section, or the amount necessary to satisfy the creditor's claim, whichever is less. The judgment may be entered against:
> (1) The first transferee of the asset or the person for whose benefit the transfer was made; or

---

[5]    In Cheyenne's Reply Memo, it contends that objective evidence of intent is not sufficient to establish fraudulent intent, and, rather, that subjective evidence (which could only be obtained from the deceased debtor, Virgil B. LaRosa) is required for the LaRosa Brothers to sustain their claim. Cheyenne relies on In re Jeffrey Bigelow Design Group, Inc., which states "actual fraudulent intent requires a subjective evaluation of the debtor's motive." 956 F.2d 479, 484 (4th Cir. 1992). Bigelow arose, however, in a bankruptcy action under 11 U.S.C. § 548(a), and not under the West Virginia statute at issue here. In contrast, § 40-1A-4 provides eleven factors to consider in determining actual intent. None of the listed factors includes "the subjective intent of the debtor." Furthermore, the Court has not found any West Virginia case law indicating that evidence of the subjective intent of the debtor is required to find evidence of actual intent to defraud.

(2) Any subsequent transferee other than a good faith
transferee who took for value or from any subsequent
transferee.

It is evident from the statute that the LaRosa Brothers are
not required to bring their claims solely against the Debtors, and,
in fact, may bring a claim against a subsequent transferee or
person for whose benefit the transfer was made. Thus, because the
Complaint alleges that Cheyenne was either the first or a
subsequent transferee of the assets that were allegedly
fraudulently conveyed, and that the transfers were done for
Cheyenne's benefit, Cheyenne is a proper defendant in this case.

Next, Cheyenne claims that the remedies sought by the LaRosa
Brothers are not available against Cheyenne. If, for example, the
line of credit extended by Huntington National Bank resulted in an
improper transfer, it is the bank Cheyenne contends, not the
Brothers, that has a claim. The Complaint, however, seeks redress
"for what amounts to a diminution in the Debtors' assets" as a
result of the draw down on the line of credit. According to the
Brothers, that draw down was intended to hinder, delay or defraud
the Debtors' creditors, or was constructively fraudulent pursuant
to § 40-1A-4.

Because the Complaint alleges that Cheyenne not only was a
transferee of the line of credit, but that it also benefitted from

17

**ORDER DENYING CHEYENNE SALES COMPANY'S**
**MOTION TO DISMISS**

the draw down on the line of credit, Cheyenne's argument on this ground lacks merit.

As a third basis for dismissal, Cheyenne asserts that disregarding the lease between Cheyenne and the LaRosa children who are the Individual Defendants "denies the children [] the actual value associated with the use of the property and permits a value to the debtors which is inconsistent with and more than they were entitled to receive." Although Cheyenne alleges that this is inconsistent with §§ 40-1A-1 to -12, it does not explain how.

The argument is meritless. Cheyenne does not represent the LaRosa children's interests. Further, were the lease part of a fraudulent transfer, the children would not be entitled to its benefit.

The fourth ground for dismissal asserted by Cheyenne is that it has neither transferred assets nor advanced money to the Debtors. Rather, it argues, the lines of credit at issue were used to protect the Debtors' more valuable assets. Cheyenne's argument seems to be that the line of credit does not constitute an asset, as defined by § 40-1A-1(b), because an asset must be "property of the debtor," and in this case the line of credit was the property of Cheyenne, not of the Debtors.

## ORDER DENYING CHEYENNE SALES COMPANY'S
## MOTION TO DISMISS

The Complaint, however, alleges that the Debtors transferred assets to Huntington National Bank in exchange for a line of credit for the benefit of Cheyenne. W. Va. Code § 40-1A-7 allows recovery from persons who were the intended beneficiaries of a fraudulent transfer. Therefore, when viewed in the light most favorable to the LaRosa Brothers, the facts in the Complaint allege a viable claim against Cheyenne under this theory of recovery.

Cheyenne's fifth basis for dismissal is that the transfer was made in the ordinary course of business. Pursuant to § 40-1A-8(f)(2), a transfer is not voidable if made in the ordinary course of the business of the debtor and the insider. The LaRosa Brothers, however, correctly point out that this defense is factually based and not an appropriate ground for a 12(b)(6) dismissal.

Finally, Cheyenne asserts that the statute of limitations under West Virginia Code § 40-1A-9 has run. That statute provides that a plaintiff must bring a claim arising under the Uniform Fraudulent Transfers Act "within four years after the transfer was made or the obligation was incurred, or if later, within one year after the transfer or obligation was or could reasonably have been discovered by the claimant." Cheyenne contends that it first entered into a verbal lease with the Individual Defendants over

**ORDER DENYING CHEYENNE SALES COMPANY'S
MOTION TO DISMISS**

twenty-five years ago, and memorialized the lease in January 2003. Similarly, it asserts that the line of credit at issue dates back to at least January 2001.

The LaRosa Brothers, however, point out that factual issues abound concerning whether the lease was, in fact, entered into over twenty-five years ago, and whether the purported "Renewal Lease" actually was executed in November 2003, rather than in January 2003.[6] They also argue that, although the line of credit may have been established in 2001, the alleged fraudulent transfer triggering the statute is the draw made on the line of credit on June 26, 2003. Accordingly, they contend that both alleged fraudulent transfers took place less than four years before they filed their complaint.

In Rubin v. Manufacturers Hanover Trust Co., 661 F.2d 979 (2nd Cir. 1981), the Second Circuit held that, in cases arising under the Bankruptcy Code, an obligation is incurred under a guaranty line of credit when the principal obligor draws on the line of credit. The section of the bankruptcy code at issue in Rubin applied only to "transfers and obligations made or incurred within one year prior to the filing of a bankruptcy petition." Id. at 989 (internal quotations omitted).

---

[6] The Complaint was filed on June 12, 2006.

**ORDER DENYING CHEYENNE SALES COMPANY'S
MOTION TO DISMISS**

Although it analyzes provisions of the bankruptcy code, <u>Rubin</u> nevertheless is helpful here, where under the Uniform Fraudulent Transfers Act, Cheyenne has argued that the transfers and obligations at issue were incurred when the Debtors executed their principal guarantees and created the various security interests under them. The Second Circuit rejected this same argument, finding that "[e]ven after the guarantees were executed, there could be no liability under them until [the bank] had actually loaned money to [the principal obligors]." <u>Id.</u> at 990.  It thus concluded that, "until the loans were made, there existed only a framework through which [the guarantors] might incur obligations, but they had not done so yet." <u>Id.</u>

The Court finds the reasoning in <u>Rubin</u> persuasive and will follow it here.  Therefore, because the Complaint was filed within four years of Cheyenne's draw down on the line of credit, the LaRosa Brothers Complaint is not time-barred by the applicable statute of limitations.

### III.  CONCLUSION

For the reasons stated above, the Court **DENIES** Cheyenne's motion to dismiss (dkt. no. 12).

It is so **ORDERED**.

### ORDER DENYING CHEYENNE SALES COMPANY'S
### MOTION TO DISMISS

The Clerk is directed to transmit copies of this Order to counsel of record.

DATED: November 27, 2007.


/s/ Irene M. Keeley
IRENE M. KEELEY
UNITED STATES DISTRICT JUDGE