IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

JOSEPH LAROSA and DOMINICK LAROSA,

    Plaintiffs,

v.                              Civil Action No. 1:07CV78
                                        (STAMP)

ANDREA PECORA, also known as Andrea Fucillo,
JENNIFER LAROSA WARD, CHRIS WARD,
VIRGIL D. LAROSA, SANDRA LAROSA
and CHEYENNE SALES CO., INC.,

    Defendants.

**MEMORANDUM OPINION AND ORDER
GRANTING AS FRAMED PLAINTIFFS' MOTION
FOR PRELIMINARY INJUNCTION**

I.  Background

The plaintiffs, Joseph and Dominick LaRosa (the "LaRosa brothers"), loaned $800,000.00 to Virgil Benito and Joan LaRosa (the "debtors"). After the debtors defaulted on this loan, the LaRosa brothers filed suit in the United States District Court for the District of Maryland, ultimately obtaining a judgment (the "Judgment") for $2,844,612.87, plus $10,000.00 in attorney fees and costs.

On June 12, 2007, the LaRosa brothers filed the above-styled civil action under the West Virginia Uniform Fraudulent Transfers Act ("WVUFTA"), W. Va. Code §§ 40-1A-1 et seq., contending that defendants Andrea Pecora, also known as Andrea Fucillo, Jennifer LaRosa Ward, Chris Ward, Virgil David LaRosa, and Sandra LaRosa (the "individual defendants"), along with Cheyenne Sales Company,

Inc. ("Cheyenne")[1], engaged in, or benefitted from, fraudulent transfers meant to hinder the LaRosa brothers' attempts to satisfy the Maryland Judgment.[2]

Trial in this matter was set for April 6, 2009.  On April 2, 2009, however, defendant Cheyenne filed a voluntary petition for relief under Chapter 7 of Title 11 of the United States Bankruptcy Code in the United States District Court for the Northern District of West Virginia.  Accordingly, pursuant to 11 U.S.C. § 362 of the United States Bankruptcy Code, the present case as against defendant Cheyenne was automatically stayed.

The individual defendants immediately requested a stay of the trial scheduled to commence on April 6, 2009.[3]  After a series of telephone hearings, this Court decided that a continuance of the case was appropriate in order that sufficient time for all briefing

---

[1] Cheyenne is a coal tipple and cleaning facility located in Upshur County, West Virginia, on real property owned by the debtors' children, who happen to be the individual defendants in this case.  Virgil Benito LaRosa was the sole shareholder of Cheyenne stock.  Upon his death in the summer of 2006, the stock is now currently held by his estate.

[2] These alleged fraudulent transfers are numerous and thoroughly discussed in this Court's memorandum opinion and order denying the defendants' several motions for summary judgment. (Order at 3-6, Mar. 20, 2009).

[3] The parties dispute whether the bankruptcy court should enter an order staying the above-styled civil action against all party defendants.  On April 3, 2009, Cheyenne filed an emergency motion for an order staying this matter with the United States Bankruptcy Court for the Northern District of West Virginia.  The individual defendants filed a response to the Cheyenne emergency motion to stay the action, as well as an emergency motion to stay the trial scheduled to commence on April 6, 2009.

could take place in both the bankruptcy proceeding and in this civil action. All parties agreed to this continuance, although the plaintiffs now contend that their assent to the continuance was predicated on the explicit agreement by individual defendants' counsel that a stipulated injunction would be entered prohibiting the individual defendants from alienating or disposing of assets while the case was in abeyance. Thus, on April 3, 2009, this Court entered an order continuing the trial in this case until May 27, 2009.

Currently pending before this Court is the plaintiffs' emergency motion for a preliminary injunction, as the parties have been unable to agree upon the content of any stipulated injunction. The individual defendants filed a response to which the plaintiffs did not reply. For the reasons set forth below and following a hearing on the motion for preliminary injunction held on April 17, 2009, the plaintiffs' motion for preliminary injunction is granted as framed.

## II. Applicable Law

The United States Court of Appeals for the Fourth Circuit recognized that "preliminary injunctions are extraordinary remedies involving the exercise of a very far-reaching power to be granted only sparingly and in limited circumstances." MicroStrategy Inc. v. Motorola, Inc., 245 F.3d 335, 339 (4th Cir. 2001) (quoting Direx Israel, Ltd. v. Breakthrough Med. Corp., 953 F.2d 802, 816 (4th Cir. 1992)) (internal quotations omitted).

3

In Blackwelder Furniture Co. v. Seilig Mfg. Co., Inc., 550 F.2d 189 (4th Cir. 1977), Rum Creek Coal Sales, Inc. v. Caperton, 826 F.2d 353 (4th Cir. 1991), and Direx Israel, Ltd. v. Breakthrough Medical Corp., 952 F.2d at 802, the Fourth Circuit has set forth the equitable factors that a district court must consider when determining whether a temporary restraining order or preliminary injunction should issue. The four factors which must be considered in granting the preliminary injunction under the Fourth Circuit test are:

> (1) the likelihood of irreparable harm to the plaintiff if the preliminary injunction is denied, (2) the likelihood of harm to the defendant if the requested relief is granted, (3) the likelihood that the plaintiff will succeed on the merits, and (4) the public interest.

Direx Israel, 952 F.2d at 812 (citing Rum Creek, 926 F.2d at 859). Additionally, the "[p]laintiff bears the burden of establishing that each of these factors supports granting the injunction." Id. (quoting Technical Publishing Co. v. Lebhar-Friedman, Inc., 729 F.2d 1136, 1139 (7th Cir. 1984)).

The Direx Israel court emphasized that "[t]he 'likelihood of irreparable harm to the plaintiff is the first factor to be considered in this connection." Id. If the plaintiff makes "a 'clear showing' of irreparable injury absent preliminary injunction relief,' a district court must then balance the likelihood of irreparable harm to the plaintiff without an injunction against the likelihood of harm to the defendant without an injunction against the likelihood of harm to the defendant with an injunction. Id.;

4

Blackwelder, 550 F.2d at 195. Then, if a decided imbalance of hardship appears in the plaintiff's favor, the plaintiff need not show a likelihood of success; plaintiff need only show that grave or serious questions are presented by plaintiff's claim. Id. at 195-196; see also James A. Merritt & Sons v. Marsh, 791 F.2d 328, 330 (4th Cir. 1986) ("When the balance of harms decidedly favors the plaintiff, he is not required to make a strong showing of a likelihood of success. . . ."). The district court should also consider the public interest. Blackwelder, 550 F.2d at 196. However, as the Blackwelder court concluded, "[t]he two more important factors are those of probable irreparable injury to plaintiff without a decree and of likely harm to the defendant with the decree." Id.

The issuance of a preliminary injunction is committed to the sound discretion of the district court. Conservation Council of North Carolina v. Costanzo, 505 F.2d 498, 502 (4th Cir. 1974). If a preliminary injunction is granted, the order granting same must "(A) state the reasons why it issued; (B) state its terms specifically; and (C) describe in reasonable detail -- and not by referring to the complaint or any other document -- the act or acts restrained or required." See Fed. R. Civ. P. 65(d).

### III. Discussion

A. Authority to Issue Preliminary Injunction

The parties dispute whether this Court has the requisite authority to issue a preliminary injunction in this case.

Specifically, the individual defendants argue that the Supreme Court's holding in Grupo Mexicano de Desarrollo S.A. v. Alliance Bond Fund, 527 U.S. 308, 326 (1999), precludes this Court from entering a preliminary injunction. The plaintiffs, in turn, argue that Grupo Mexicano is distinguishable from the case currently pending before this Court.[4]

In Grupo Mexicano, the Supreme Court held that an injunction freezing assets cannot be entered in an action for damages where no lien or equitable interest in the assets is claimed. 527 U.S. at 326. Nevertheless, Grupo Mexicano suggests what when equitable claims are involved, as opposed to solely legal damages, the rule barring a preliminary injunction is inapplicable. See Grupo Mexicano, 527 U.S. at 325 ("The preliminary relief available in a suit seeking equitable relief has nothing to do with the preliminary relief available in a creditor's bill seeking equitable assistance in the collection of a legal debt.") (distinguishing Deckert v. Independence Shares Corp., 311 U.S. 282 (1940)). The Supreme Court also surmised that the Uniform Fraudulent Transfer Act may have altered a creditor's interest in his debtor's property:

> Several States have adopted the Uniform Fraudulent Conveyance Act (or its successor the Uniform Fraudulent Transfers Act), which has been interpreted as conferring on a nonjudgment creditor the right to bring a fraudulent conveyance claim. . . . Insofar as Rule 18(b) applies to

---

[4]The plaintiffs do concede, however, that while the WVUFTA provides for injunctive relief, W. Va. Code § 40-1A-7, the statute is silent on the issue of preliminary injunctions.

such an action, the state statute eliminating the need
for a judgment may have altered the common-law rule that
a general contract creditor has no interest in his
debtor's property. Because this case does not involve a
claim of fraudulent conveyance, we express no opinion on
this point.

Id. at 324 n. 7.

The Fourth Circuit has addressed the scope of Grupo Mexicano in the context of a fraudulent transfer claim. In United States v. Oncology Assocs., P.C., 198 F.3d 489 (4th Cir. 1999), the lower court entered a pre-judgment injunction freezing the defendants' assets based upon allegations that the defendants defrauded Medicare and CHAMPUS[5] programs and were thereafter fraudulently transferring assets to insulate themselves from liability. Id. at 492. When the Supreme Court issued its decision in Grupo Mexicano, however, the defendants in Oncology Assocs. filed a motion to dissolve the injunction. Id. The amended complaint demanded damages, the avoidance of alleged fraudulent transfers made, and the imposition of a constructive trust. Id. at 497. Distinguishing Grupo Mexicano, the court noted:

> When the plaintiff creditor asserts a cognizable claim to specific assets of the defendant or seeks a remedy involving those assets, a court may in the interim invoke equity to preserve the status quo pending judgment where the legal remedy might prove inadequate and the preliminary relief furthers the court's ability to grant the final relief requested.

---

[5]The Civilian Health and Medical Program of the Uniformed Services ("CHAMPUS") provides federal health benefits to eligible dependents of members of the uniformed services.

7

Id. at 496-497. Ultimately, the court refused to dissolve the injunction, stating instead, "It is clear that this case does not present the pure money damage claim addressed in Grupo Mexicano. . . . That money damages are claimed along with equitable relief does not defeat the district court's equitable powers." Id. at 498. See also In re Focus Media, Inc., 387 F.3d 1077, 1084-1086 (9th Cir. 2004) (holding that because the plaintiff pleaded causes of action for fraudulent conveyance and constructive trust, and ultimately sought money damages for the fraudulent conveyance and turnover, imposition of a constructive trust, and a permanent injunction, the holding in Grupo Mexicano did not bar the court from issuing a preliminary injunction freezing assets); but see In re Teknek, LLC, 343 B.R. 850 (N.D. Ill. 2006) (holding that a preliminary injunction was unavailable when the plaintiff pleaded a claim under the state's Uniform Fraudulent Transfer Act and sought the avoidance of an allegedly fraudulent transfer of an entire business as relief).

This Court holds that Grupo Mexicano does not prohibit a preliminary injunction in this case. Here, the plaintiffs seek mostly equitable relief: (1) that each of the transfers be avoided; (2) that judgment be granted in favor of the LaRosa brothers against each of the defendants in an amount equal to the value of the transfers; (3) that all ownership interests and beneficial interests in the annuities purchased with the proceeds of the transfers be awarded to the LaRosa brothers; (4) that attachment be

issued against property of each of the defendants; (5) that as to each defendant, an injunction be issued against any further disposition of property outside the ordinary course of business, pending payment of Judgment; (6) that a receiver be appointed to take charge of the property transferred to, and currently held by, any of the defendants; (7) that the plaintiffs be authorized to levy execution on the asset or assets transferred or its proceeds; and/or (8) that this Court grant whatever other relief it deems appropriate. That said, because this case does not present a claim for purely monetary damages, Grupo Mexicano does not bar the issuance of a preliminary injunction. Accordingly, this Court is authorized to issue a preliminary injunction in this case, provided that the Blackwelder factors warrant as such.

B. Blackwelder Factors

Through their motion for a preliminary injunction, the plaintiffs seek an order by this Court prohibiting the individual defendants and/or their agents, servants, and employees, from removing any funds from any bank or other institution, and encumbering or transferring any assets, with the exception of payment for services or merchandise purchased by the individual defendants in their day to day personal affairs. Also, as part of the preliminary injunction, the plaintiffs seek an order that requires the individual defendants to submit an accounting showing deposits and withdrawals from all accounts held and identifying all transfers made.

1. <u>Irreparable Harm to Plaintiffs</u>

First, the plaintiffs must establish that they are likely to suffer irreparable harm if injunctive relief is not granted. See <u>Direx Israel</u>, 952 F.2d at 812. Irreparable harm to the plaintiffs must be actual and imminent, not remote and speculative. As the court noted in <u>Direx Israel</u>:

> The hardship balance and the likelihood of success determination are separate, sequential steps in the application of the hardship test. [<u>Blackwelder Furniture Co. of Statesville, Inc. v. Seilig Mfg. Co.</u>, 550 F.2d 189 (4th Cir. 1977)] makes it plain that the balancing of hardship should proceed any consideration of the likelihood of success. . . . And the reason for this statement is easy to understand. The hardship test, by its very nature, is to proceed the consideration of the likelihood of success, since the outcome of the hardship test fixes the degree of proof required for establishing the likelihood of success by the plaintiff. If the hardship balance tilts sharply and clearly in the plaintiff's favor, the required proof of likelihood of success is substantively reduced. Similarly, if the hardship to plaintiff is minimal or nonexistant . . . then the burden on the plaintiff to establish likelihood of success on the merits becomes considerably greater. The likelihood of success determination is to proceed only after the hardship balance itself had been resolved. <u>It is obvious error to resolve the hardship test by including it in the likelihood-of-success test</u>.

<u>Id.</u> at 817 (emphasis added).

This Court believes that the plaintiffs have presented evidence which, at the very least, raises strong inferences that they will be irreparably, actually, and immediately harmed, absent the issuance of a preliminary injunction by this Court. The plaintiffs have a substantial interest in protecting the individual defendants from transferring property, as well as maintaining the status quo, while the trial is continued in this case.

B.  <u>Harm to Individual Defendants</u>

If it is shown that the plaintiffs have made a "clear showing" of irreparable injury, absent preliminary injunctive relief, then the next step for the Court to take is "to balance the 'likelihood' of irreparable harm to [the plaintiffs] [from failure to grant interim relief] against the 'likelihood' of harm to [the individual defendants] [from the grant of such relief]. . . ." <u>Blackwelder</u>, 550 F.2d at 195 (citations omitted). If, after balancing those two factors [i.e. irreparable harm to the plaintiffs against harm to the individual defendants], the balance "tips decidedly" in favor of the plaintiffs, a preliminary injunction will be granted if the plaintiffs raise questions going to the merits "so serious, substantial, difficult and doubtful, as to make them fair ground for litigation and thus for more deliberate investigation." <u>Id.</u>

Here, the individual defendants maintain that they would be harmed by living within a budget, seeking court approval to pay for every unexpected obligation, and revealing to the plaintiffs the identify of every person or entity to whom the individual defendants transferred money. This Court disagrees. The individual defendants' harm, if preliminary injunctive relief is granted, is minimal, at least at this stage of the proceedings. The individual defendants can expend monies for necessary and ordinary living expenses and make expenditures in the ordinary course of business. This Court believes, therefore, that the balance of harm, at this time, weighs in favor of the plaintiffs.

11

C. Likelihood of Success on the Merits

This Court has determined that the balancing of harms to the parties in this case tips decidedly in favor of the plaintiffs, at least at this point. Therefore, on the issue of the likelihood of success on the merits, the plaintiffs must only demonstrate that it has "raised questions going to the merits so serious, substantial, difficult and doubtful, as to make them fair grounds for litigation and thus for more deliberate investigation." Direx Israel, 952 F.2d at 813.

Recently, this Court issued a memorandum opinion and order denying the defendants' several motions for summary judgment. (Order, Mar. 20, 2009). Specifically, this Court decided that genuine issues of material fact remain in this case, including, but not limited to, whether the transfer of assets occurred, and if so, whether it was the debtors' property transferred, whether such property was transferred without receiving a reasonably equivalent value, and/or whether the property was transferred with the actual intent to hinder, delay, or defraud the debtors' creditors. (Order at 14-15, Mar. 20, 2009). Moreover, this Court held that several badges of fraud remained present in this case, that although do not create a presumption of a fraudulent transfer, certainly remain relevant evidence. See Nicholas Loan & Mortgage, Inc. v. W. Va. Coal Co-op, Inc., et al., 547 S.E. 2d 234, 240 (W. Va. 2001) (citing Uniform Fraudulent Transfer Act, § 4, cmt. 5). While there are other aspects that will need to be considered as

this case proceeds, this Court finds that the plaintiffs have, at this time, met this third element for the granting of a preliminary injunction.

D. The Public Interest

The National Conference of Commissioners on Uniform State Laws adopted the Uniform Fraudulent Transfer Act in 1984. See generally Uniform Fraudulent Transfer Act (contained in 7A Uniform Laws Annotated 274 (West 1999)). The Act was designed to protect unsecured creditors against debtors who make transfers out of, or make obligations against, the debtor's estate in a manner adverse to the creditors' rights. See Uniform Fraudulent Transfer Act, § 3, cmt. 2 ("[T]he purpose of the Act [is] to protect a debtor's estate from being depleted to the prejudice of the debtor's unsecured creditors."). West Virginia adopted the Act in 1986. See 1986 Acts of the Legislature, Chapter 166.

Because the balance of the harms in this case at this point tips decidedly in favor of the plaintiffs, and because the plaintiffs at this time have shown the requisite level of likelihood of success on the merits, in light of the public policy expressed by the Act, the issuance of a preliminary injunction would appear to be in the public interest.

IV. Conclusion

This Court finds that the likelihood of irreparable harm to the plaintiffs decidedly outweighs the likelihood of harm to the individual defendants if a preliminary injunction is issued. The

plaintiffs have established the requisite level of likelihood of success on the merits. Finally, this Court has determined that the public interest would be served by the issuance of a preliminary injunction. Accordingly, it is hereby DECREED and ORDERED that:

> the individual defendants and/or their agents, servants, employees and all persons acting on their behalf are prohibited and restrained from removing any funds, whether held jointly in whole or in part, from any bank, brokerage firm, or other institution, wherever situated and without limitations, and from encumbering, pledging, selling or otherwise transferring or hypothecating any and all assets, whether held jointly or in whole or in part, wherever situated and without limitations, with the exception of payment for services rendered to or merchandise purchased by the individual defendants in the course of their ordinary day to day personal affairs; and
>
> the individual defendants and/or their agents, servants, employees and all persons acting on their behalf are enjoined, forbidden and restrained from disposing, transferring, encumbering, altering or alienating any and all assets of the individual defendants, with the exception of payment for services rendered to or merchandise purchased by the individual defendants in the course of their ordinary day to day personal affairs; and
>
> the individual defendants should be prepared to submit to the Court, if requested, an accounting showing deposits into and withdrawals from any and all accounts held by them, whether jointly or in whole or in part, and the identity of the transferor and transferee of any deposit or withdraw.

This injunction, unless earlier dissolved, shall expire either when the bankruptcy court enters an order staying this action or the commencement of trial in this matter on May 27, 2009. `

Rule 65(c) of the Federal Rules of Civil Procedure states that "[t]he court may issue a preliminary injunction or a temporary restraining order only if the movant gives security in an amount that the court considers proper to pay the costs and damages

sustained by any party found to have been wrongfully enjoined or restrained."  After hearing argument from the plaintiffs and the individual defendants, this Court ORDERS the plaintiffs to post a security bond of $40,000.00.

IT IS SO ORDERED.

The Clerk is DIRECTED to transmit a copy of this memorandum opinion and order to counsel of record herein.

DATED:    April 29, 2009

/s/ Frederick P. Stamp, Jr.
FREDERICK P. STAMP, JR.
UNITED STATES DISTRICT JUDGE