IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA


JOSEPH LAROSA and DOMINICK LAROSA,

       Plaintiffs,

v.                                       Civil Action No. 1:07CV78
                                                    (STAMP)
ANDREA PECORA, also known as Andrea Fucillo,
JENNIFER LAROSA WARD, CHRIS WARD,
VIRGIL D. LAROSA, SANDRA LAROSA
and CHEYENNE SALES CO., INC.,

       Defendants.


**MEMORANDUM OPINION AND ORDER
DENYING PARTIES' MOTIONS FOR RELEASE
OF THE BOND OBLIGATION AS MOOT
AND AMENDING THE JUDGMENT**


I.  Background

The above-styled civil action concerns alleged fraudulent transfers made by the defendants[1] in an attempt to hinder, delay, and/or defraud the plaintiffs from satisfying a bankruptcy judgment.[2] In its September 15, 2010 order, this Court issued findings of fact and conclusions of law stating that the plaintiffs are entitled to an attachment in their favor against Virgil D. LaRosa and Sandra LaRosa in the amount of $6,799,161.42, which is the amount of the original judgment that the plaintiffs secured in Maryland against Virgil B. LaRosa and Joan LaRosa ("debtors"),

---

[1]This Court uses "defendants" throughout this opinion to refer to the remaining non-settling defendants, Virgil D. LaRosa and Sandra LaRosa.

[2]See ECF No. 322 for this Court's original findings of fact and conclusions of law.

including interest and attorneys' fees.  This Court also awarded judgment for the plaintiffs in the amount of $1,191,609.00.  The Court further noted that during the pendency of this action, the plaintiffs reached a settlement with defendants Andrea Pecora, Jennifer LaRosa Ward, and Chris Ward and that the judgment would be subject to a setoff that may be determined to be appropriate through this settlement.  As the parties and this Court were unaware of the exact amount of the setoff at the time of the judgment order, the findings of fact and conclusions of law did not reflect the amount of any setoff.[3]

After this Court made its findings, the parties filed motions to alter and amend the judgment and the plaintiffs also filed a motion for order of contempt of court.  In the defendants' motion to alter or amend the judgment, the defendants argued that post-judgment attachment is not available under the West Virginia Uniform Fraudulent Transfer Act ("WVUFTA") and alternatively even if it is, the amount of the attachment is clearly erroneous as the amount of the attachment should have been limited to the value of the fraudulently transferred assets.  The defendants further argued that this Court should reduce the amount of the judgment by the amount of setoff resulting from the co-defendants' settlement. This Court granted the defendants' motion to alter or amend the

_____

[3]This amount was later agreed by the parties to be $186,390.00.  See ECF No. 382

judgment insomuch as it sought to reduce the judgment based on the amount of the setoff resulting from the co-defendants' settlement and reduce the amount of attachment to reflect the value of the fraudulently transferred assets. However, this Court denied the defendants' motion to alter or amend the judgment insomuch as it argued that attachment was not available under the WVUFTA.

In the plaintiffs' motion to alter or amend the judgment, the plaintiffs argued that they specifically sought a judgment against the defendants in the full amount of $6,799,161.00, not just an attachment of that amount, and the plaintiffs were entitled to such a judgment as a result of the Court's findings. These findings included a finding that certain transfers between Cheyenne Sales Company ("Cheyenne") and Regal Coal Company, Inc. ("Regal"), whose sole shareholder is defendant Virgil D. LaRosa, were fraudulent. The plaintiffs argued that these transfers resulted in a judgment above what this Court awarded. This Court denied the plaintiffs' motion to alter to amend the judgment. In the plaintiffs' motion for an order of contempt, the plaintiffs argued that the defendants violated this Court's injunction order of April 29, 2009 by altering the value of their equity in Regal Coal Company. This Court denied the plaintiffs' motion for an order of contempt because it found that the plaintiffs failed to prove that the defendants' conduct violated the terms and conditions of the injunction.

The parties then appealed this Court's findings to the United States Court of Appeals for the Fourth Circuit. On appeal, the defendants took issue with the Court's original findings of fact and conclusions of law. The defendants argued that there can be no liability stemming from Cheyenne's annuities purchase based on Cheyenne's $700,000.00 drawdown of its credit line. Specifically, the defendants argued that because Virgil B. LaRosa's pledge of securities that served as guaranty of the $700,000.00 line of credit occurred more than four years before the plaintiffs filed this case, the claim is time barred by the WVUFTA. The Fourth Circuit agreed and reversed this Court's findings, stating that "because the [plaintiffs] did not file their claim within four years of the establishment of the line of credit, their claim was time barred by the WVUFTA's statute of repose." LaRosa v. LaRosa, 482 F. App'x 750, 755 (4th Cir. 2012). Therefore, the Fourth Circuit reduced this Court's original judgment against the defendants by $700,000.00, from $1,191,609.00 to $491,609.00.

The plaintiffs also appealed. Specifically, the plaintiffs appealed the denial of their motion to alter or amend the judgment. The plaintiffs argued that it was an abuse of discretion for this Court to find that certain transfers from Cheyenne to Regal were fraudulent but not assign a value and award a remedy for such transfers. The Fourth Circuit agreed. As such, the Fourth Circuit remanded the issue for this Court to make further findings. The

4

Fourth Circuit stated that first it was remanding the case for this Court to "engage in further fact-finding to determine the amount of the award owed to the [plaintiffs]." Id. at 756. Second, it stated that "assuming the district court maintains its finding that the Cheyenne Regal transfers violated the WVUFTA," this Court was to make "specific findings as to which property of the [defendants] was transferred that brought the Cheyenne-Regal transactions within the reach of the WVUFTA." Id.

Upon remand, this Court held a status and scheduling conference. After this conference, this Court issued an order directing the parties to advise the Court of the status of the case and setting a briefing schedule. The parties were to brief the remaining issues in the case as a result of the remand. In the order, this Court indicated that the cash bond would remain in place, but it reserved its option to reduce or eliminate it at a later date. Thereafter, the parties both filed motions for release of the bond obligation. The parties also filed briefs on the remaining issues in the case, as directed to by this Court.

Initially, this Court finds that the parties' motions for release of the bond obligations are denied as moot. As such, any issue concerning the amount of the bond to be released to the parties is resolved by this Court's findings regarding the issues on remand. For the reasons stated below, this Court finds that upon further review after the remand, the plaintiffs are entitled

to a judgment, and as such an attachment, in the amount of $305,219.00 plus post-judgment interest calculated in accordance with 28 U.S.C. § 1961.

## II. Discussion

In the plaintiffs' brief on remand, the plaintiffs argue that they are entitled to a $6,255,233.00 judgment based on fraudulent transfers relating to the transfer of profits and opportunities for profits from 2003 through 2008, as such transfers were transfers of the debtors' property. The plaintiffs state that the transfers were made between the debtors and the defendants. The $6,255,233.00 figure allegedly represents the profits generated by Regal from 2003 to 2008. The plaintiffs claim that these funds should have been paid to Cheyenne had the funds not been intentionally and fraudulently transferred to the defendants. The plaintiffs provide specific instances of how they believe the profits were diverted from Cheyenne to Regal.

In the defendants' brief on remand, the defendants first assert that assets owned by a corporation in which a debtor is a shareholder are not the property of the debtor, but are instead owned by the corporation. Therefore, they assert that viewing the opportunity for profit as an asset under the WVUFTA requires that it be considered an asset of Cheyenne, not of the debtors as shareholders. Moreover, the defendants assert that such an opportunity may not even be considered an asset under the WVUFTA,

and even if it is considered an asset, it was encumbered by a valid lien and excluded as an asset under the WVUFTA. The defendants also take issue with the dollar figure that the plaintiffs claim they are entitled to. The defendants assert that if the transactions are seen as transfers by the debtor, this figure grossly overvalues the transactions between Cheyenne and Regal and it is not related to the transfer of the debtors' assets, as it is only based on Regal's profits.

The Fourth Circuit stated that upon remand, this Court is "to make specific findings as to which property of the debtors was transferred that brought the Cheyenne-Regal transactions within the reach of the WVUFTA." LaRosa, 482 F. App'x at 756. However, this statement was qualified by stating that such findings should be made "assuming the district court maintains its finding that the Cheyenne-Regal transfers violated the WVUFTA." Id. Because this Court finds that it was not the property of the debtors that was transferred, but rather the property of Cheyenne that was transferred, this Court cannot find that such transfers violated the WVUFTA.

The following is required to assert a violation of the WVUFTA:

> (a) A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation:
> > (1) With actual intent to hinder, delay or defraud any creditor of the debtor; or

7

> (2) Without receiving a reasonably equivalent
> value in exchange for the transfer or
> obligation and the debtor:
>> (i) Was engaged or was about to
>> engage in a business or a
>> transaction for which the remaining
>> assets of the debtor were
>> unreasonably small in relation to
>> the business or transaction; or
>> (ii) Intended to incur, or believed
>> or reasonably should have believed
>> that he (or she) would incur, debts
>> beyond his (or her) ability to pay
>> as they became due.

W. Va. Code § 40-1A-4. Accordingly, the debtor must have "made the transfer or incurred the obligation." Id. Such a transfer is "not made until the debtor has acquired rights in the asset transferred." W. Va. Code § 40-1A-6(d). The debtor who must acquire these rights is the "person who is liable on a claim." W. Va. Code § 40-1A-1(f). An asset is defined by the WVUFTA as the "property of a debtor." W. Va. Code § 40-1A-1(b). Further, as the defendants indicated, "[a]ssets owned by a corporation in which a debtor is a stockholder are not property of the debtor, but that of the corporation." In re Levitsky, 401 B.R. 695, 710 (Bankr. D. Md. 2008) (citing Kreisler v. Goldberg, 478 F.3d 209, 214 (4th Cir. 2007)).

As the Fourth Circuit stated, "the WVUFTA does not prohibit the fraudulent transfer of assets from Cheyenne to Regal; it prohibits fraudulent transfers from the Debtors to others." LaRosa, 482 F. App'x at 757 (citing W. Va. Code § 40-1A-1). This is because Cheyenne is not the debtor, but rather Virgil B. LaRosa

8

and Joan LaRosa are the debtors in this matter.  Id. at 755 n.3.
Therefore, any transfers must have involved the assets of Virgil B.
LaRosa and Joan LaRosa, not the assets of Cheyenne in order to
constitute a violation of the WVUFTA.

The plaintiffs have not indicated any actual assets of the
debtors that were transferred to Cheyenne or to Regal that resulted
in fraudulent transfers under WVUFTA.  Instead, the plaintiffs rely
on Cheyenne's transfers of profits and opportunities for profit.
For instance, the plaintiffs take issue with Cheyenne selling coal
to Regal at a lower price than it could obtain by selling the coal
to others.  While Cheyenne may have made more money by selling the
coal to a different company and it may be considered a transfer of
profits or opportunity for profit, this transfer dealt with the
assets of Cheyenne not the debtors.  Specifically, it dealt with
coal owned by Cheyenne.  These assets are not property of the
debtors, as assets of a corporation are not the assets of
shareholders.

This Court recognizes that in its findings of fact and
conclusions of law that was entered after the trial of this matter,
this Court found that the transactions between Cheyenne and Regal
were transfers of assets away from the debtors.  See ECF No. 322
*38.  However, upon further review, this Court must modify these
findings.  Accordingly, this Court finds that these transfers were
not transfers away from the debtors, but instead transfers away

from Cheyenne.  Therefore, the plaintiffs are not entitled to any additional judgment as a result of such transfers.

The last matter this Court must address is the actual judgment owed to the plaintiffs as a result of the Fourth Circuit's and this Court's findings.  As indicated above, this Court originally issued a judgment against the defendants in the amount of $1,191,609.00. This judgment was subject to a setoff as determined by the amount of the settlement reached between the plaintiffs and defendants Andrea Pecora, Jennifer LaRosa Ward, and Chris Ward.  This amount was later agreed by the parties to be $186,390.00.  See ECF No. 382 *8.  Thereafter, the Fourth Circuit reversed this Court's findings in part, and found that $700,000.00 of that judgment, which constituted  Cheyenne's drawdown of its credit line was not to be included in the final judgment, because the claim involving the drawdown was time barred.  Deducting the settlement amount and the drawdown amount, the judgment is reduced to $305,219.00.  This amount is not enlarged as a result of the Cheyenne-Regal transactions discussed above due to this Court's findings concerning those transaction.  Therefore, this Court amends its findings to reflect a judgment for the plaintiffs in the amount of $305,219.00.

### III.  Conclusion

For the reasons stated above, the amount of bond to be released to the plaintiffs is $305,219.00 plus post-judgment

interest, calculated in accordance with 28 U.S.C. § 1961 from the date of the original judgment, September 16, 2010.  Counsel for the parties are DIRECTED to meet and confer to calculate such interest and are further DIRECTED to report to this Court on or before **March 21, 2013** concerning their calculations.  The remainder of the bond, after the interest is calculated is to be released to the defendants.[4]  As such, the parties' motions for partial release of the bond obligation (ECF Nos. 409 and 411) are DENIED AS MOOT.

IT IS SO ORDERED.

The Clerk is DIRECTED to transmit a copy of this memorandum opinion and order to counsel of record herein.  Pursuant to Federal Rule of Civil Procedure 58, the Clerk is DIRECTED to enter judgment on this matter.

DATED:     March 7, 2013


/s/ Frederick P. Stamp, Jr.
FREDERICK P. STAMP, JR.
UNITED STATES DISTRICT JUDGE

---

[4]The current bond amount is $1,010,000.00.  See ECF No. 387. Therefore, after the judgment amount plus interest is released to the plaintiffs from this amount, the defendants are entitled to the remainder of this bond, including any interest thereon.